FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 13, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEBRA S.,[1] <br>               Plaintiff, <br><br>     vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>               Defendant. | No. 2:19-cv-00131-MKD <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF

Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned

identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.

Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs

the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

ORDER - 4

1    If the severity of the claimant's impairment does not meet or exceed the

2    severity of the enumerated impairments, the Commissioner must pause to assess

3    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

4    defined generally as the claimant's ability to perform physical and mental work

5    activities on a sustained basis despite his or her limitations, 20 C.F.R. §

6    404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

7    At step four, the Commissioner considers whether, in view of the claimant's

8    RFC, the claimant is capable of performing work that he or she has performed in

9    the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

10    capable of performing past relevant work, the Commissioner must find that the

11    claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

12    performing such work, the analysis proceeds to step five.

13    At step five, the Commissioner considers whether, in view of the claimant's

14    RFC, the claimant is capable of performing other work in the national economy.

15    20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

16    must also consider vocational factors such as the claimant's age, education, and

17    past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

18    adjusting to other work, the Commissioner must find that the claimant is not

19    disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to

20

ORDER - 5

other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 20, 2016, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of March 26, 2015.  Tr. 167-70.  The application was denied initially and on reconsideration.  Tr. 92-98, 100-06.  Plaintiff appeared before an administrative law judge (ALJ) on February 7, 2018.  Tr. 35-63.  On April 4, 2018, the ALJ denied Plaintiff's claim.  Tr. 15-34.

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 26, 2015.  Tr. 20.  At step two, the ALJ found that Plaintiff had the following severe impairments: contusion right foot, sprain left foot, complex regional pain syndrome (CRPS), and gout.  Tr. 20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 22. The ALJ then concluded that Plaintiff had the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can occasionally lift and carry a maximum of 10 pounds and can frequently lift and carry a maximum of less than 10 pounds. She can stand and walk for two hours total in an eight-hour workday with normal breaks. She can sit for six hours total in an eight-hour workday with normal breaks. [Plaintiff] can occasionally balance; stoop; crouch; kneel; crawl; and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. [Plaintiff] can never have exposure to hazards, such as unprotected heights or dangerous heavy machinery.

Tr. 23.

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a program aid and employment specialist. Tr. 27. Alternatively, at step five, the ALJ found that considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as charge account clerk and document preparer. Tr. 27-28. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of March 26, 2015, though the date of the decision. Tr. 28.

On February 21, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2. Whether the ALJ properly evaluated the medical opinion evidence. ECF No. 14 at 15.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims. ECF No. 14 at 16-19. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably

ORDER - 8

be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 24.

### 1. Daily Activities

The ALJ found that Plaintiff's activities were inconsistent with the level of impairment Plaintiff alleged. Tr. 24. An ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ indicated that Plaintiff reported she was unable to work due to a multitude of symptoms, including dizziness, fatigue, difficulty with balance, lack of stamina, numbness, limited range of motion, stiffness, difficulty sleeping, standing, walking, kneeling, lifting, and reaching, difficulty with concentration and memory loss, constant depression with feelings of sadness, lack of interest in activities she used to enjoy, migraines that caused nausea, photosensitivity, and required that she lie down in a dark quiet room, and swelling in her feet and legs that required her to elevate her legs for several hours each day. Tr. 24 (citing Tr. 47-56, 216-26, 236, 242, 245-55). However, the ALJ noted that Plaintiff's allegations of disabling impairments were inconsistent with her active lifestyle. Tr. 24. The ALJ observed that Plaintiff stated she spent time each day with people in person or talking on the phone, caring for pets, preparing meals, watching television, and reading. Tr. 24 (citing Tr. 217, 222). The ALJ noted that Plaintiff reported she did household chores in short increments of time, including cleaning, laundry, and dishes. Tr. 24 (citing Tr. 220). The ALJ noted that Plaintiff stated

ORDER - 11

she drove a car, shopped in stores for groceries each week, spent time baking, and was able to pay bills and mange finances. Tr. 24 (citing Tr. 52, 220-21, 607). The ALJ cited Plaintiff's report that she was not socially isolated and regularly spent time with her sister, her sister's husband, a friend, and her daughter. Tr. 24 (citing Tr. 607). Further, the ALJ noted that Plaintiff reported to her primary care provider in August 2016 that she was able to walk her dog every day. Tr. 24 (citing Tr. 428). The ALJ also cited Plaintiff's testimony that she climbed several stairs in her home and three stairs outside her home each day, went out three or four times each week, and frequently spent time outside sitting in her yard. Tr. 25 (citing Tr. 52-54). The ALJ reasonably concluded that these activities were inconsistent with the debilitating level of impairment Plaintiff alleged and are consistent with the ALJ's RFC of limited sedentary work. Tr. 24.

Plaintiff challenges the ALJ's finding by asserting that Plaintiff "did admit that she performs these activities; however, she did not perform these activities for [eight] hours a day." ECF No. 14 at 17. An ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities that "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Here, the ALJ identified Plaintiff's specific alleged impairments and noted specific activities that indicated Plaintiff was less limited than she alleged. Tr. 24-

25.  This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

### 2.  *Minimal Treatment and Improvement with Treatment*

The ALJ found that Plaintiff's symptom complaints were inconsistent with Plaintiff's minimal treatment and the level of improvement she showed with treatment.  Tr. 25.  Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

Further, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. § 404.1529(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of

ORDER - 13

determining eligibility for benefits) (internal citations omitted); *see also*

*Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a

claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ found the record evidence showed that Plaintiff did not

require significant forms of treatment, as her only podiatric surgical intervention

was for the removal of ingrown toenails. Tr. 25. The ALJ also observed that

Plaintiff's swelling improved to a minimum with the use of prescribed pain

medication and anti-inflammatory medication for a time, which was consistent

with the ability to tolerate the restricted range of sedentary work outlined in the

RFC. Tr. 25. Moreover, the ALJ noted that Plaintiff's allegations of debilitating

pain symptoms were inconsistent with her treatment records from physical therapy

between April and October 2015, which documented improvement in her foot

impairment. Tr. 25; *see, e.g.,* Tr. 318 (April 15, 2015: Plaintiff was given muscle

relaxers which helped decrease her right foot pain and symptoms; treatment notes

showed "[s]ignificantly decreased irritation in foot today"); Tr. 374 (April 28,

2015: treatment notes reported that Plaintiff was in physical therapy, tapering her

pain medications, and the muscle relaxers "really are helping"); Tr. 326 (April 29,

2015: physical therapy treatment notes showed Plaintiff was "feeling better"); Tr.

344 (May 18, 2015: physical therapy treatment notes indicated Plaintiff had

"increased tolerance to touch and standing"); Tr. 367 (June 26, 2015: physical

therapy treatment notes reported Plaintiff had "[d]ecreased irritation in foot"). The ALJ reasonably concluded that Plaintiff's minimal treatment, as well as the improvement in her lower extremity swelling after participating in physical therapy and the use of pain medication and anti-inflammatory medication, supported a finding that Plaintiff was capable of sedentary work with additional functional limitations, which was inconsistent with Plaintiff's subjective symptom claims. Furthermore, Plaintiff fails to challenge the ALJ's conclusion, so argument on this issue is waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining the court may decline to address the merits of issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (recognizing the court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Plaintiff's treatment history, documenting both minimal treatment and improvement with treatment, was a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 3. Lack of Supporting Medical Evidence

The ALJ found the level of impairment Plaintiff alleged was not supported by the medical evidence. Tr. 25-26. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601;

*Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). As an initial matter, Plaintiff contends the ALJ improperly discredited her symptom claims "solely because" her testimony was not substantiated by objective medical evidence. ECF No. 14 at 18-19. However, as discussed *infra* and *supra*, this contention has no factual basis, as the lack of objective evidence was not the sole basis for the ALJ's analysis of Plaintiff's claims. Plaintiff's argument ignores the three additional reasons set forth by the ALJ which provide permissible reasons for discounting Plaintiff's symptom claims.

Here, the ALJ found the objective medical evidence did not support the disabling musculoskeletal impairments and chronic pain symptoms Plaintiff described. Tr. 25-26; *see, e.g.,* Tr. 300, 302 (March 27, 2015: Plaintiff suffered a right-foot contusion injury without evidence of fracture, as demonstrated from a right foot x-ray); Tr. 453 (April 11, 2015: an x-ray of Plaintiff's right foot revealed negative findings); Tr. 456-57 (April 11, 2015: an ultrasound of Plaintiff's right foot demonstrated no evidence of any venous abnormality); Tr. 304 (June 15, 2015: a bone scan revealed mild pathology in Plaintiff's bilateral feet, including

ORDER - 16

mild increased radiotracer uptake in the left calcaneus, right Achilles tendon, and bilateral mid-foot at the first metatarsophalangeal joint); Tr. 392 (November 20, 2015: treatment notes reported that an MRI of Plaintiff's right foot was consistent with gout); Tr. 418-19 (December 22, 2015: a bone scan demonstrated minimal degeneration in both of Plaintiff's feet but without any significant changes since the June 2015 bone scan); Tr. 444 (November 19, 2016: an ultrasound of Plaintiff's right lower extremity was normal and showed no evidence of right leg deep venous thrombosis).

Further, the ALJ observed that except for noted swelling of Plaintiff's feet, the objective findings and clinical observations consistently documented by examining and treating providers in the record were generally mild and unremarkable. Tr. 25-26; *see, e.g.,* Tr. 372 (April 2, 2015: treatment notes reported Plaintiff was "really in no distress," her right foot was swollen across the dorsum, there was no obvious discoloration, and no crepitus was noted); Tr. 456 (April 11, 2015: treatment notes showed no edema or significant bruising or swelling of Plaintiff's right foot, although she did have tenderness over the metatarsal phalangeal joint region); Tr. 374 (April 28, 2015: treatment notes showed Plaintiff was no longer using crutches, her right foot was a little swollen across the dorsum, there was no obvious discoloration, and no crepitus was noted); Tr. 306 (June 2, 2015: an examining podiatrist noted bilateral edema of Plaintiff's dorsal foot with

an otherwise normal vascular, neurological, and musculoskeletal examination, and CRPS was suggested as a possible diagnosis); Tr. 378 (June 3, 2015: Plaintiff presented wearing flip-flops and ambulating without crutches, her right foot was swollen across the dorsum, there was blotchy discoloration, and no crepitus was noted); Tr. 762 (June 8, 2015: Plaintiff was ambulating normally); Tr. 763 (July 22, 2015: Plaintiff had normal gait and station, normal motor strength and tone, and her extremities were unremarkable); Tr. 476, 479 (October 10, 2015: treatment notes stated that Plaintiff reported exacerbation of her foot pain, but a physical examination revealed no obvious deformities or issues with her feet, no peripheral edema, and no clubbing or cyanosis of Plaintiff's extremities); Tr. 399 (January 12, 2016: treatment notes showed that Plaintiff had an independent medical examination with an orthopedist, neurologist, and rheumatologist, and they determined she did not have CRPS and could return to full duty); Tr. 496 (September 27, 2016: a physical examination revealed Plaintiff's upper and lower extremity strength was equal bilaterally, and all joints had active and passive full range of movement and were free from deformity, erythema, warmth, or effusion); Tr. 511 (October 4, 2016: treatment notes showed Plaintiff had good range of motion in all major joints, tenderness down into the left sciatic notch, she moved all four extremities appropriately, was up and ambulatory independently without difficulty, with intact distal pulses, no edema, and no tenderness); Tr. 524 (October

5, 2016: Plaintiff demonstrated good range of motion in all major joints); Tr. 442

(November 19, 2016: Plaintiff's chief complaint was right leg and calf pain, but

treatment notes reported Plaintiff noted mild swelling that was "not obvious on

inspection," and upon examination Plaintiff's right leg was normal in appearance,

and there was no discoloration); Tr. 443 (November 19, 2016: an emergency

department provider reported that Plaintiff had "a very benign physical exam"); Tr.

551 (November 21, 2016: Plaintiff's upper and lower extremity strength was equal

bilaterally, all joints had active and passive full range of movement and were free

from deformity, erythema, warmth, or effusion); Tr. 561 (November 22, 2016:

Plaintiff had no joint tenderness, deformity, or swelling); Tr. 573 (December 1,

2016: Plaintiff denied extremity weakness, joint pain, joint swelling, joint

tenderness, joint redness, stiffness, muscle aches, muscle weakness, or muscle

cramps); Tr. 649 (June 20, 2017: Plaintiff had no edema and showed good range of

motion in all major joints); Tr. 680 (June 30, 2017: Plaintiff had no edema, no

tenderness, and good range of motion in all major joints); Tr. 884-85 (January 16,

2018: Plaintiff's primary care physician noted swelling in her bilateral feet, some

discoloration in the skin, and tenderness across the metatarsophalangeal joints, but

no crepitus).

Plaintiff disputes the ALJ's determination that the objective medical

evidence did not support her symptom claims, asserting instead that the medical

evidence of record supported a finding of disability.  ECF No. 14 at 18-19.  The

Court may not reverse the ALJ's decision based on Plaintiff's disagreement with

the ALJ's interpretation of the record.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen

the evidence is susceptible to more than one rational interpretation" the court will

not reverse the ALJ's decision).  On this record, the ALJ reasonably concluded that

the objective medical evidence did not support the level of musculoskeletal

impairments and chronic pain symptoms Plaintiff alleged.  Tr. 25-26.  The lack of

support in the medical evidence coupled with the other reasons articulated

provided clear and convincing reasons to give less weight to Plaintiff's subjective

symptom testimony.

### 4. Unprescribed Use of a Cane

The ALJ also discounted Plaintiff's symptom allegations because Plaintiff's

treatment notes failed to indicate that her use of a cane was medically prescribed.

Tr. 24.  An ALJ may discount a claimant's subjective complaints based on the

unprescribed use of an assistive device, such as a cane.  *See Chaudhry v. Astrue*,

688 F.3d 661, 671 (9th Cir. 2012); *see also Tommasetti*, 533 F.3d at 1040.  Here,

the ALJ noted that although Plaintiff alleged that she used a cane to climb stairs,

balance, and prevent falling, Plaintiff also admitted that no doctor had ever

prescribed the use of a cane.  Tr. 24; *see* Tr. 254 (Plaintiff reported that her cane

was not prescribed).  In her opening brief, Plaintiff concedes that no medical

source "specifically advise[d] her to use a cane." ECF No. 14 at 18. However, Plaintiff argues that her providers "knew that she required a cane to ambulate." ECF No. 14 at 18. As noted *supra*, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038. The ALJ reasonably concluded that Plaintiff's use of an unprescribed cane did not support the level of musculoskeletal impairments and chronic pain symptoms Plaintiff alleged. Tr. 24.

## B. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Alexander Kats, M.D., P.Z. Pearce, M.D., Heather Tick, M.D., Christopher Anderson, M.D., and Mary Gallegos, ARNP. ECF No. 14 at 20; ECF No. 16 at 6, 8. Plaintiff only specifically challenges the ALJ's findings related to the diagnosis of CRPS. ECF No. 14 at 19-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight

than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " *Ghanim*, 763 F.3d at 1161 (alteration in original);

ORDER - 22

*see* 20 C.F.R. § 404.1513 (2013).[3]  However, an ALJ is required to consider evidence from non-acceptable medical sources.  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. § 404.1513(d) (2013).  "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources.  20 C.F.R. § 404.1513(d) (2013).  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

### 1.  Dr. Kats

On February 24, 2017, state agency medical consultant Alexander Kats, M.D., reviewed the medical record and opined that Plaintiff would be able to occasionally and frequently lift and/or carry 10 pounds, stand and/or walk for two hours, and sit for about six hours in an eight-hour workday.  Tr. 78-91.  Dr. Kats opined that Plaintiff would be able to occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally balance, kneel, crouch, and crawl due to obesity and pain in her feet from CRPS.  Tr. 88.  Dr. Kats determined that Plaintiff would be able to frequently stoop.  Tr. 88.  He noted that Plaintiff must avoid

---

[3] For cases filed prior to March 27, 2017, the definition of an acceptable medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, are located at 20 C.F.R. § 404.1513(d) (2013).

concentrated exposure to hazards. Tr. 89. The ALJ gave Dr. Kats' opinion significant weight. Tr. 26.

Plaintiff contends the ALJ erred by giving significant weight to the opinion of Dr. Kats, a reviewing physician, and little weight to the diagnosis of CRPS by Plaintiff's treating and examining providers. ECF No. 14 at 20. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

The ALJ found that Dr. Kats' opinion was consistent with the objective medical evidence and with the clinical findings of Plaintiff's examining medical sources. Tr. 26. The ALJ also determined that Dr. Kats was familiar with Social Security regulations and disability programs and he had the opportunity to review Plaintiff's medical evidence. Tr. 26. Plaintiff suggests the ALJ should have credited the diagnosis of CRPS by Plaintiff's treating and examining providers over the opinion of the reviewing doctor. ECF No. 14 at 20. However, Plaintiff fails to articulate how the ALJ erred in weighing the medical source opinions and the CRPS diagnosis, as Dr. Kats assessed limitations based on Plaintiff's "obesity and feet pain from complex regional pain syndrome," Tr. 88, and the ALJ found Plaintiff's CRPS to be a severe impairment which was accounted for in formulating the RFC, Tr. 20, 23. As discussed *infra*, the ALJ provided a legally sufficient reason for giving less weight to the opinion of Plaintiff's treating provider, Dr. Pearce, and for giving more weight to Dr. Kats' opinion. Also discussed *infra*, the ALJ was not required to weigh the findings of Plaintiff's other disputed providers.

### 2. Dr. Pearce

Plaintiff's treating provider, P.Z. Pearce, M.D., completed Labor and Industries Activity Prescription Forms from April 2015 to June 2017. Tr. 830-71. The forms prepared by Dr. Pearce indicated that Plaintiff would be limited to

lifting and carrying between five to 10 pounds, sitting for up to six hours, and standing or walking for one hour. Tr. 830-71. Dr. Pearce opined Plaintiff would also have postural and environmental restrictions. Tr. 830-71. Dr. Pearce diagnosed Plaintiff with CRPS. Tr. 843-71.

The ALJ gave Dr. Pearce's opinion some weight, discounting his opined restriction to standing and walking for only one hour. Tr. 26. Because Dr. Pearce's opinion was contradicted by the nonexamining opinion of Dr. Kats, Tr. 88-89, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Pearce's opinion. *Bayliss*, 427 F.3d at 1216. In this regard, Plaintiff's sole contention in her opening brief is that "here, that was not done." ECF No. 14 at 19-20. However, it is insufficient for Plaintiff to mention this possible argument, but fail to address or challenge the ALJ's reason for rejecting Dr. Pearce's opinion.[4] *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925,

---

[4] Counsel has a duty to substantively brief the issues presented for this Court's serious and just consideration. Fed. R. Civ. P. 1; LCivR 1; Wash. Rule of Prof'l Conduct 1.3. This Court has previously admonished Plaintiff's counsel for inadequate briefing. *See, e.g., Rainey v. Comm'r of Soc. Sec.*, No. 2:17-cv-00271-FVS (E.D. Wash. Sept. 25, 2018) (Report and Recommendation, ECF No. 17 at 6-10) (adopted Oct. 11, 2018). The absence of developed argument is an

930 (9th Cir. 2003) ("We require contentions to be accompanied by reasons.");

*McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to

in a perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived.  It is not sufficient for a party to mention a

possible argument in a most skeletal way, leaving the court to . . . put flesh on its

bones.").  Therefore, any challenges are waived, and the Court may decline to

review them.  *See Carmickle*, 533 F.3d at 1161 n.2 (determining Court may decline

to address on the merits issues not argued with specificity); *Kim*, 154 F.3d at 1000

(the Court may not consider on appeal issues not "specifically and distinctly

argued" in the party's opening brief).

Despite Plaintiff's waiver, the Court has conducted an independent review of

the ALJ's decision and finds the ALJ's rejection of Dr. Pearce's standing and

walking limitation is supported by specific and legitimate reasons supported by

substantial evidence in the record.  The ALJ found that Dr. Pearce's opined

restriction to standing and walking for only one hour was internally inconsistent

_____

unacceptable manner of advocacy and a disservice to Plaintiff and the legal

profession.  Counsel is cautioned that the opening brief must include analysis

supported by citations to the record and an explanation why, in the context of the

case, reversible error has occurred.

ORDER - 27

with Dr. Pearce's own clinical findings. Tr. 26. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). The ALJ noted that Dr. Pearce's clinical findings showed Plaintiff had only mild physical abnormalities. Tr. 26; *see, e.g.,* Tr. 878 (August 30, 2017: Dr. Pearce reported Plaintiff was "really in no distress today," although she was in a wheelchair, both feet were swollen, she was generally tender across the MTP joints, but no crepitus was noted; Plaintiff's bone scan was unremarkable, an MRI of Plaintiff's right foot was consistent with gout, and there was effusion of the MTP joints); Tr. 880 (October 11, 2017: Dr. Pearce reported Plaintiff was "really in no distress today," although she was in a wheelchair, and both feet were swollen); Tr. 882 (December 5, 2017: Dr. Pearce reported Plaintiff was "really in no distress today," she was walking with a cane, and her right knee was still somewhat swollen from a fall); Tr. 885 (January 16, 2018: Dr. Pearce reported Plaintiff was "really in no distress today," she was walking with a cane, and her right knee was still somewhat swollen from a fall); Tr. 884-85 (Dr. Pearce

acknowledged that radiology imaging and an EMG nerve conduction study yielded no evidence of significant pathology); Tr. 399 (Dr. Pearce acknowledged that Plaintiff had an independent medical examination with an orthopedist, neurologist, and rheumatologist, and they determined she did not have CRPS and could return to full duty).

In her reply brief, Plaintiff states she is not asking this Court to reweigh the evidence or substitute its judgment for the judgment of the ALJ, but rather, Plaintiff asserts "there is only one way" to read the medical records and opinion of Dr. Pearce. ECF No. 16 at 8. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). Where, as here, evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679; *Hill*, 698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings if they are not supported by substantial evidence). The ALJ provided a specific and legitimate reason to discount Dr. Pearce's opined standing and walking limitation.

   *3. Dr. Tick, Dr. Anderson, Ms. Gallegos*

On November 18, 2016, Heather Tick, M.D., noted that Plaintiff's symptoms of pain, numbness, skin color change, and misalignment of her right toes met the criteria for CRPS. Tr. 429. On July 5, 2017, Plaintiff's right knee

was evaluated by Christopher Anderson, M.D., after she slipped, fell, and injured her right knee. Tr. 873-74. Dr. Anderson recommended that Plaintiff participate in physical therapy, and noted he did "not foresee needing any type of ACL repair work, given her poor preexisting ambulatory condition." Tr. 874. Treatment notes from July 6, 2017 showed that Mary Gallegos, ARNP, diagnosed Plaintiff with CRPS. Tr. 783. The ALJ discussed Dr. Tick's CRPS diagnosis and observations, Tr. 25-26, but did not weigh the opinions of Dr. Tick, Dr. Anderson, or Ms. Gallegos.

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinions of these providers, as "[e]ach doctor believed that the objective findings supported the diagnosis of [CRPS]." ECF No. 14 at 20. Treatment notes, in general, do not constitute medical opinions. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). The Ninth Circuit has found no error in ALJ decisions that do not weigh statements within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work. *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (recognizing that when a physician's report

did not assign any specific limitations or opinions regarding the claimant's ability

to work, "the ALJ did not need to provide 'clear and convincing reasons' for

rejecting [the] report because the ALJ did not reject any of [the report's]

conclusions."); *see also Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the

"mere diagnosis of an impairment ... is not sufficient to sustain a finding of

disability."). Here, the treatment notes, findings, and observations of Dr. Tick, Dr.

Anderson, and Ms. Gallegos concern only medical diagnoses and do not address

any functional limitations or opinions regarding Plaintiff's ability to work. Tr.

429, 783, 873-74. Therefore, the ALJ did not need to provide reasons to reject the

findings of these providers, and did not err in weighing the opinion evidence.

*Turner*, 613 F.3d at 1223.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as

the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is

**GRANTED**.

ORDER - 31

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED December 13, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE